UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------- X
                                                        :
ANDES PETROLEUM ECUADRO LIMITED,                        :
                                                        :     ORDER AND OPINION
                                          Petitioner,   :     GRANTING PETITION TO
                                                        :     CONFIRM AND DENYING
              -against-                                 :     MOTION TO VACATE THE
                                                        :     ARBITRATION AWARD
OCCIDENTAL EXPLORATION AND                              :
PRODUCTION COMPANY,                                     :
                                                        :     21 Civ. 3930 (AKH)
                                          Respondent.   :
                                                        :
                                                        :
                                                        :
------------------------------------------------------- X
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

This case arises out of a dispute and subsequent arbitration regarding an agreement to carry out hydrocarbon development in the Ecuadorian Amazon Region ("Block 15"). Petitioner Andes Petroleum Ecuador Limited ("Petitioner") moves to confirm (ECF No. 1), and Respondent Occidental Exploration and Production Company ("Respondent") moves to vacate (ECF No. 28), an arbitration award of approximately $500 million. For the reasons described below, Petitioner's motion to confirm is granted, and Respondent's motion to vacate is denied.

## BACKGROUND

The relevant facts are as follows. In 1999, Respondent entered into a Participation Contract with PetroEcuador, pursuant to which Respondent would carry out hydrocarbon development in Block 15. Final Arbitration Award ("Final Award") ¶ 12, ECF No. 3-1. In 2000, Respondent and Petitioner signed two agreements—the Farmout Agreement and the Joint Operating Agreement—in which Respondent agreed to assign Petitioner a 40 percent interest in Respondent's exploration and exploitation rights in Block 15, subject to the approval of the Ecuadorian government. *Id.* ¶¶ 13–14; ECF No. 3-4.

1

In 2004, Ecuador began threatening to terminate Respondent's contract. Final Award ¶ 18. On February 22, 2006, Petitioner and Respondent entered into a Letter Agreement, which amended the Farmout Agreement. *Id.* ¶ 20; ECF No. 3-3. As relevant here, paragraph 2(g) of the Letter Agreement provided:

> [i]f Occidental receives any monetary award from the Government of Ecuador as a result of the Government's actions to enforce caducity and terminate Occidental's contract with respect to Block 15, Occidental agrees that [Andes] is entitled to a 40% share in the net amount received, after all costs and expenses of the Caducity Proceedings [as defined in the Letter Agreement] have been reimbursed or paid (in calculating such amount there shall be no double counting).

*Id.* ¶ 2(g).

In May 2006, Ecuador terminated Respondent's Block 15 rights, and Respondent commenced an arbitration proceeding against Ecuador before the International Centre for the Settlement of Investment Disputes ("ICSID"), seeking compensation for its losses. Final Award ¶¶ 21–22. On January 7, 2016, Respondent reached a settlement agreement with Ecuador for approximately $980 million and a release of certain disputed tax and labor sums. *Id.* ¶ 33. On February 23, 2016, Petitioner invoked paragraph 2(g) of the Letter Agreement and demanded that Respondent pay 40 percent of the amount received in the settlement. *Id.* ¶ 34. Respondent rejected this demand on March 4, and Petitioner commenced an arbitration proceeding on July 10, 2016. *Id.* ¶¶ 34–35.

Pursuant to the Parties' Agreement and consistent with the AAA Commercial Arbitration Rules, each Party appointed one arbitrator to the three-person tribunal (the "Tribunal), and the two party-appointed arbitrators appointed the third presiding arbitrator. *Id.* ¶¶ 8, 10. In August 2017, Petitioner nominated Richard Ziegler ("Ziegler"), and Respondent nominated Robert Smit ("Smit"), who together, in turn, nominated James Hosking ("Hosking") to chair the Tribunal. *Id.* ¶ 40. During the vetting process, Smit had disclosed that he knew

Petitioner's Lead Counsel, Laurence Shore ("Shore"), in a professional context from arbitration conferences. *See* ECF No. 31-1. On January 10, 2018, Smit was appointed to serve on the International Chamber of Commerce ("ICC") panel in a separate, unrelated arbitration; Shore was appointed to serve as president of the same panel in April 2018. Declaration of Laurence Shore ¶ 28a, ECF No. 38-1. While neither Smit nor Shore disclosed their appointments directly to Respondent, the appointments were publicly listed on multiple websites. *Id.* ¶¶ 31, 33.

The Tribunal conducted a merits hearing on September 1–3, 2020, and on March 26, 2021, unanimously issued an award (the "Award") in favor of Petitioner in the amount of $391,879,747 plus interest and costs, finding that Respondent's "refusal to pay [Petitioner] 40% of the Settlement Amount recovered from the Government of Ecuador as a consequence of the ICSID Arbitration was a breach of paragraph 2(g) of the Letter Agreement." Final Award ¶¶ 118, 347, 347a. Petitioner moves to confirm, and Respondent to vacate, the Award. Respondent's proffered grounds for vacatur, under subsections 10(a)(1)–(4) of the FAA, relate to the alleged impartiality of Respondent's appointed arbitrary, and the alleged imperfect execution of the duties of the arbitration panel.

## DISCUSSION

I.   Legal Standard

"Congress enacted the Federal Arbitration Act ("FAA") [, 9 U.S.C. § 1 *et seq.*,] to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). The Act makes contracts to arbitrate "valid, irrevocable, and enforceable," so long as their subject involves "commerce." FAA, § 2. The Act supplies a

streamlined mechanism for enforcing arbitration awards—a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it. *Hall*, 552 U.S. at 582; FAA §§ 9–11.

A court's review of an arbitration award is "severely limited in view of the strong deference courts afford to the arbitral process." *Certain Underwriting Members of Lloyds of London v. Fla., Dep't of Fin. Servs.*, 892 F.3d 501, 505 (2d Cir. 2018) (citation omitted). This limitation prevents frustration of the "twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Landau v. Eisenberg*, 922 F.3d 495, 498 (2d Cir. 2019) (citation omitted). Therefore, under the Federal Arbitration Act, the "party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

Section 9 of the FAA provides that "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11." *Hall*, 552 U.S. at 582 (quoting 9 U.S.C. § 9). Under Section 10(a), a court may vacate an arbitration award in four situations:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> 4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

II. Analysis

    A. Corruption, Fraud, or Undue Means

        Respondent argues that Smit's incomplete disclosures, and Shore and Petitioner's silence, on their previous professional relationship constituted fraud because the disclosures did not give Respondent reason to do any further research into the professional contacts of the chosen arbitrators. *See* Memorandum of Law in Support of Motion to Vacate Arbitration Award ("Mem. Vacate"), at 19–21, ECF No. 29.

        Vacatur on grounds of fraud requires a party to "adequately plead that (1) respondent engaged in fraudulent activity; (2) even with the exercise of due diligence, [the party] could not have discovered the fraud prior to the award issuing; and (3) the fraud materially related to an issue in the arbitration." *Odeon Cap. Grp. LLC v. Ackerman*, 864 F.3d 191, 196 (2d Cir. 2017). To adequately plead materiality, a party "must demonstrate a nexus between the alleged fraud and the decision made by the arbitrators, although [the party] need not demonstrate that the arbitrators would have reached a different result." *Id.*

        Even assuming that Petitioner and the related arbitrators engaged in fraudulent activity through their incomplete or nondisclosures, Respondent cannot adequately plead fraud because "with the exercise of due diligence," Respondent could have discovered their relationships because in June 2018, at least one publicly-available website had published Smit and Shore's appointments to the ICC panel. Accordingly, I cannot vacate the Award for fraud.

    B. Arbitrator Partiality

        Respondent argues that Smit was "evidently partial" to Petitioner, and that Smit's relationship with Shore was material because they were working together closely at the time, and

5

therefore, had the opportunity for *ex parte* communications, collegial interactions, and collaborative decisionmaking. *See* Mem. Vacate, at 21–25.

"The FAA does not proscribe all personal or business relationships between arbitrators and the parties." *Certain Underwriting*, 892 F.3d at 507. An arbitrator will be disqualified for evident partiality "only when a reasonable person, considering all of the circumstances, would *have* to conclude that an arbitrator was partial to one side." *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007) (citation omitted). "It is the materiality of the undisclosed conflict that drives a finding of evident partiality, not the failure to disclose or investigate *per se*." *Certain Underwriting*, 892 F.3d at 506. Courts find material relationships where arbitrators have undisclosed pecuniary interests or close familial relationships, but "the fact that two arbitrators served together in one arbitration at the same time that they served together in another is [not], without more, evidence that they were predisposed to favor one party over another in either arbitration." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 74 (2d Cir. 2012).

Because Respondent bases its argument of partiality on only concurrent service on two panels and merely speculates about the opportunity to engage in misconduct, it fails to provide the something "more" to establish material partiality. I am therefore not compelled to conclude that Smit was partial to Petitioner, or that the Award should be vacated on grounds of arbitrator partiality.

C. Arbitrator Misconduct

Respondent argues that Smit's failure to disclose his professional relationship with Shore was fundamentally unfair to Respondent because it deprived Respondent of its

6

contractual rights to disclosure and to demand that Smit be removed and replaced by a "wholly independent" arbitrator.  Mem. Vacate, at 17–18.

"Courts have interpreted section 10(a)(3) to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." *Tempo Shain Corp. v. Bertek*, 120 F.3d 16, 20 (2d Cir. 1997).  Misconduct must amount to a denial of fundamental fairness of the arbitration proceeding.  *Roche v. Local 32B-32J Serv. Empls. Int'l Union*, 755 F. Supp. 622, 624 (S.D.N.Y. 1991).  "Arbitral misconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator." *Baumann Bus Co. v. Transp. Workers Union Of: Am., Local 252, AFL-CIO*, No. 19-CV-02980, U.S. Dist. LEXIS 53023, at *13–14 (Mar. 22, 2021) (quoting *In re Cragwood Managers, L.L.C. (Reliance Ins. Co.)*, 132 F. Supp. 2d 285, 287 (S.D.N.Y. 2001)).  "To show arbitral misconduct, 'the challenging party must show that his right to be heard has been grossly and totally blocked, and that this exclusion of evidence prejudiced him.'" *Id.* (quoting *Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 30–31 (S.D.N.Y. 2017)).

Here, Respondent points to nothing in the arbitral *proceedings* to suggest that it was denied fundamental fairness.  Respondent does not claim that its right to be heard was "grossly and totally blocked," nor that it was prevented from offering evidence.  *Oracle Corp.*, 276 F. Supp. 3d at 30–31.  In fact, Respondent does not point to anywhere it objected to the way the arbitrators conducted the hearing.  *Baumann*, No. 19-CV-02980, at *16.  Smit's failure to disclose his limited personal relationship simply does not rise to the level of misconduct necessary to justify and compel vacatur.

D. Arbitrator Exceeded Authority

OEPC argues that Smit exceeded his powers under the parties' agreement when he failed to disclose his relationship with Shore because "[t]he arbitration agreement, by its plain terms, deprived [Smit] of any authority to 'detract from' the disclosure obligations it mandated." Mem. Vacate, at 16.  In other words, Smit lacked the authority not to disclose the relationship, and therefore, vacatur is warranted because Smit "destroyed [Respondent's] right to a *wholly* independent panel and prejudiced [Respondent's] right to remove and replace Smit as an arbitrator." *Id.* at 17 (emphasis in original).

The Second Circuit has "consistently accorded the narrowest of readings to [§ 10(a)(4)], in order to facilitate the purpose underlying arbitration:  to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (citation omitted).  It is not enough "to show that the panel committed an error -- or even a serious error.  It is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (citation omitted).

Under § 10(a)(4), the proper inquiry is therefore "whether the arbitrator's award draws its essence from the agreement to arbitrate . . . . If the answer to this question is yes, . . . the scope of the court's review of the award itself is limited." *ReliaStar*, 564 F.3d at 85–86 (citation omitted).  The court does "not consider whether the arbitrators correctly decided the issue" and should "uphold a challenged award as long as the arbitrator offers a barely colorable justification for the outcome reached." *Id.* at 86 (citation omitted).

Here, Respondent does not allege that either Smit or the Tribunal "stray[ed] from interpretation and application of the agreement." Because the Tribunal decided an issue within the scope of the agreement and offered a colorable justification for the outcome it reached, Respondent's motion to vacate the Award under Section 10(a)(4) is also denied.

## CONCLUSION

For the reasons discussed, the petition to confirm the Award is granted, and Respondent's motion to vacate the Award is denied. The Clerk shall terminate the motions (ECF Nos. 1, 28) and enter judgment for the Petitioner plus costs and interest.

SO ORDERED.

Dated:     November 15, 2021            /s/ Alvin K. Hellerstein
           New York, New York           ALVIN K. HELLERSTEIN
                                        United States District Judge

9